1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Original Filed 12/5/2006**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EQUILON ENTERPRISES LLC, a Delaware Corporation, d/b/a SHELL OIL PRODUCTS US,<br><br>                            Plaintiff,<br><br>                 v.<br><br>MEHDI SHAHBAZI, et al.,<br><br>                        Defendants. | Case Number C 06-05818 JF<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>[re. docket no. 3] |

Plaintiff Equilon Enterprises, LLC ("Equilon") moves for a preliminary injunction compelling Defendants to vacate and surrender Equilon's Salinas Shell service station. Defendant Mehdi Shahbazi ("Shahbazi") opposes the motion. The Court heard oral argument on December 1, 2006. For the reasons set forth below, the Court will grant the motion.

**I. BACKGROUND**

On September 21, 2006, Equilon filed a complaint against Shahbazi, Balwinder Singh (also known as Ben Pannu) ("Pannu"), and the Shahbazi-Pannu partnership doing business as

---

[1] This disposition is not designated for publication and may not be cited.

1   Salinas Shell (the "partnership"), (collectively "Defendants").  Equilon seeks declaratory relief,

2   injunctive relief and damages arising from Equilon's termination of Defendants' lease of the

3   Salinas Shell service station located at 417 North Main Street in Salinas, California (the "Salinas

4   Station") and Shahbazi's refusal to vacate.  On September 22, 2006, Equilon filed a motion for a

5   preliminary injunction seeking to (1) compel Defendants to surrender and vacate the Salinas

6   Station and enjoin Defendants from remaining on or re-entering the premises, pending the

7   determination of this action; (2) compel Defendants to return to Equilon all of Equilon's

8   equipment, fixtures and other property located at the premises; and (3) compel Defendants to

9   remove all of their personal property and equipment located at the premises, without injury to the

10  premises or any of Equilon's property thereon.

11       Shahbazi entered into a franchise relationship with Equilon for the Salinas Station in

12  1994 by means of a fuel supply agreement and a lease agreement.  Compl. ¶ 11.  In 1995

13  Shahbazi and Pannu became partners in the franchise.  Answer ¶ 11.  In 2002, Equilon assigned

14  its interest in the fuel supply agreement to Peninsula Petroleum, LLC ("Peninsula") which

15  proceeded to supply the Salinas Station with fuel.  Compl.¶ 12-13.  Equilon retained the lease

16  with Shahbazi and Pannu.  *Id.* ¶ 15.  In January of 2006, Shahbazi and Pannu executed a new fuel

17  supply agreement with Peninsula, the Retail Sales Agreement ("RSA").  Castelo Decl. at Ex. A.

18  The RSA designates Pannu as the "Key Management Person."  *Id.*  Under the partnership, Pannu

19  has a 50% interest in the Salinas Station; he also received a salary for his position as station

20  manager.  Answer ¶ 16.  In March of 2006, Shahbazi and Pannu executed a new Retail Facility

21  Lease (the "Lease") with Equilon.  Calhoun Decl. at Ex. C.

22       Under the Lease with Equilon, the Defendants paid monthly rent by means of an

23  electronic funds transfer ("EFT") whereby Equilon submitted electronic drafts to Defendants'

24  bank account authorizing the transfer of funds to Equilon's account.  Troxell Decl. ¶ 3.  On April

25  15, 2006, Equilon's attempted EFT for the April rent was returned for insufficient funds.  *Id.* ¶ 4.

26  Equilon sent Defendants two notices requesting payment of the April rent, on April 21 and May

27  4, respectively.  *Id.* at Ex. A, Ex. B.  No rent was paid, and on May 15, 2006, Equilon's

28

2

1    attempted EFT for May's rent also was returned for insufficient funds. *Id.* ¶ 5.  On June 1, 2006,

2    Equilon notified Defendants that the Lease would be terminated if the back rent was not paid.

3    Calhoun Decl. at Ex. A.  The Lease states that the Lessor may terminate the Lease if the Lessee

4    fails to pay rent in a timely manner when due. *Id.* at Ex. C.; Lease 18(a)(3)(vii).  On June 6,

5    2006, Equilon sent Defendants a notice terminating the Lease effective September 8, 2006,

6    ninety days after the date of the notice.  Eaves Decl. at Ex. B.  Attempted EFTs for rent in June,

7    July and August were met with information that the Defendants' bank account had been closed.

8    Troxell Decl. ¶ 6.

9        Under the RSA, Defendants also utilized EFTs to pay Peninsula for fuel after it was

10   delivered.  Castelo Decl. ¶ 4.  On eight occasions in 2006, Peninsula's attempted EFTs were

11   returned for insufficient funds. *Id.* ¶ 7.  As a result, on April 19, 2006, Defendants were placed

12   on "COD" status, meaning that they were required to pay Peninsula with a cashier's check prior

13   to the delivery of fuel. *Id.*  Defendants paid for a number of fuel deliveries in this manner. *Id.* ¶

14   8.  Peninsula electronically monitored the Salinas Station fuel tanks, and on June 9, 2006, when

15   the tanks were nearly empty, Peninsula's attempts to arrange for a delivery were met with no

16   response. *Id.* ¶ 9.  According to Peninsula's electronic monitoring, the Salinas Station ran out of

17   fuel on June 10, 2006. *Id.* ¶ 10.  The RSA provides that the agreement may be terminated if the

18   Retailer fails to maintain a sufficient amount of all grades of Seller's branded gasoline or the

19   Retailer fails to operate the Retailer's station for seven consecutive days. *Id.* at Ex. A; RSA

20   22(a)(3)(viii).  On June 19, 2006, Peninsula sent Defendants a notice terminating the RSA

21   effective ninety days later, on September 18, 2006. *Id.* at Ex. D.

22       The Lease with Equilon provides that the Lessor may terminate the Lease if the Lessee

23   fails to operate the premises for seven consecutive days.  Calhoun Decl. at Ex. C; Lease

24   18(a)(3)(viii).  On June 21, 2006, Equilon sent Defendants a supplemental termination notice,

25   citing failure to sell fuel as grounds for termination.  Eaves Decl. at Ex. C.  The notice stated that

26   the original termination date of September 8, 2006, remained in effect. *Id.*

27       On June 2, 2006, prior to Equilon's first termination notice but after Equilon's notice that

28   the Lease would be terminated if rent was not paid, Pannu's counsel sent Equilon a letter stating

3

that Pannu would surrender his interest in the Salinas Station unless it was possible for Equilon
and Pannu to make an arrangement whereby Pannu would operate the station without Shahbazi.
West Decl. at Ex. D.  Equilon did not respond to the letter.  Mot. Prelim. Inj. at 7.  On June 13,
2006, after the first termination notice had been sent, Pannu's counsel again wrote to Equilon
stating that Pannu would surrender the keys to the station on June 14, 2006.  West Decl. at Ex. E.
The letter stated that it was up to Equilon and Shahbazi to determine the proper recipient of the
surrender.  *Id.*  Equilon sent a representative to the Salinas Station, but he ultimately departed
without any keys.  Mot. Prelim. Inj. at 7.  Shahbazi alleges that he found keys the next morning,
but that neither he nor Pannu were aware beforehand if the station had keys because it was open
twenty-four hours a day and never locked.  Object. Decl. ¶ 1.

The Lease provides that if the Lessee is comprised of more than one person, then the acts
of each person are the acts of the Lessee.  Eaves Decl. at Ex. D; Lease 24.  Additionally, if the
Lessee is a business entity, the acts of the "Key Management Person" will be considered the acts
of the Lessee.  *Id.*  The Lease also allows for termination by the Lessor if the RSA is terminated.
*Id.* at 18(a)(5).  On July 13, 2006, Equilon sent Defendants a second supplemental termination
notice citing Pannu's abandonment of the Salinas Station and Peninsula's termination of the RSA
as additional grounds for termination, with the effective date to remain September 8, 2006.
Eaves Decl. at Ex. D.  Equilon alleges that Shahbazi continues to occupy the station, does not
sell any fuel, and has not attempted to pay any rent.  Mot. Prelim. Inj. at 8.

Shahbazi alleges that Equilon and Peninsula are holding more than $30,000 of
Defendants' money from Salinas Station customers who paid by credit card.  Opp'n ¶ 6.  When a
customer buys gasoline at the Salinas Station with a credit card, the money from that purchase
goes to Equilon, which then electronically transfers the money to Peninsula.  Boyd Decl. ¶ 2.
Peninsula credits the amount received against any of the station's outstanding fuel invoices, and
any remaining funds are then electronically deposited into the station's bank account.  *Id.*  When
Defendants were placed on COD status with Peninsula, Pannu instructed Peninsula to hold the
station's credit card receipts and apply them to the station's deposits for future fuel deliveries, so
that Defendants would then pay the difference between the credit card receipts and the total fuel

4

1    delivery amount with a cashier's check  *Id.* ¶ 4; Ex. A.  Under this agreement with Pannu, after

2    the Salinas Station stopped receiving fuel deliveries in June, 2006, Peninsula held a total credit

3    card balance for the Salinas Station of $37,563.24.  *Id.* ¶ 8.  Equilon alleges that in June, after

4    Pannu abandoned the Salinas Station, Pannu asked Peninsula to give any remaining credit card

5    balances to Equilon as back rent.  Supp. Castelo Supp. Decl. ¶ 2.  Equilon also alleges that in

6    June, Shahbazi asked Peninsula to send any remaining credit card balances to him in the form of

7    a cashier's check.  *Id.* ¶ 3.  In light of the conflicting claims, Peninsula filed an interpleader in

8    Monterey County Superior Court and deposited the funds with the clerk of the court.  Supp. West

9    Decl. at Ex. K.  On October 3, 2006, the court ruled that the interpleader was proper and

10   Peninsula was discharged from all liability arising from the funds.  *Id.* at Ex. L.

11        Shahbazi is representing himself in the present action.  Pannu has submitted a

12   memorandum to the Court confirming the content of the letters he sent to Equilon and asserting

13   that he will seek to hold Shahbazi accountable for any and all claims by Equilon.  Pannu has not

14   submitted an answer or opposition papers.  The partnership is unrepresented, and it also has not

15   submitted an answer or opposition papers.

16

17                                          **II. DISCUSSION**

18        A party seeking a preliminary injunction must show either (1) a likelihood of success on

19   the merits and the possibility of irreparable injury, or (2) the existence of serious questions going

20   to the merits and the balance of hardships tipping in the movant's favor.  *Roe v. Anderson*, 134

21   F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521,

22   523 (9th Cir. 1984).  These formulations represent two points on a sliding scale in which the

23   required degree of irreparable harm increases as the probability of success decreases.  *Roe*, 134

24   F.3d at 1402.

25        Equilon asserts that it will almost certainly succeed on the merits because of its numerous

26   valid reasons to terminate the Lease and because the termination notices were proper under the

27   Petroleum Practices Marketing Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*  Equilon also asserts

28   that it will suffer irreparable injury: (1) to the goodwill associated with its trademark, (2) because

                                                 5

1   of its loss of the use of its real estate, and (3) because Defendants will be unable to pay money

2   damages if Equilon prevails.  Equilon also asserts that where a franchise has been terminated in

3   accordance with the PMPA, the premises automatically revert back to the franchisor.

4       Shahbazi contends that the Lease was not validly terminated because he has complied

5   with the contract.  He asserts that Equilon has filed this lawsuit in retaliation for his attempt to

6   "put a stop to the biggest profiteering in history by big oil companies."[2]  Opp'n ¶ 3.  He also

7   contends that his inability to pay for rent and fuel is the direct result of acts by Equilon and

8   Peninsula.  He asserts that Equilon should be required to offer him temporary assistance and that

9   he should be permitted time to sell his franchise in the Salinas Station.  Shahbazi further asserts

10  that if the preliminary injunction is granted, he and his family will lose their means of making a

11  living.

12  **A. Likelihood of Success on the Merits**

13      The contractual provisions of the Lease make clear that Equilon may terminate the

14  agreement if Defendants fail to pay rent timely when due,  fail to operate the premises for seven

15  consecutive days, or if the RSA is terminated.  It appears that Equilon has all three grounds to

16  terminate the Lease.  The Lease also provides that the act of Pannu is considered the act of the

17  Lessee, and Pannu expressly and through his attorney has abandoned his interest in the Salinas

18  Station.

19      The PMPA provides that a franchisor may terminate the franchise based on the

20  occurrence of an event that is relevant to the franchise relationship and as a result of which

21  termination of the franchise relationship is reasonable, including failure by the franchisee to pay

22  to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled.

23  15 U.S.C. §§ 2802(b)(2)(c), 2802(c)(8).  The PMPA also provides that the franchisor shall

24  furnish notification of termination ninety days prior to the date on which such termination takes

25

26

27      [2]  Shahbazi has made similar assertions in a related lawsuit involving another Shell
    station operated by him in Marina, California.  *See Equilon Enterprises LLC v. Shahbazi et al.*, C
28  05-05102 JF (RS).  The Court so far has declined to grant an injunction forcing Shahbazi to
    vacate the Marina station.  The facts of the two cases, however, are significantly different.

Case No. C 06-05818 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(JFEX1)

effect.  15 U.S.C. § 2804(a)(2).  In circumstances in which it would not be reasonable for the franchisor to furnish notification ninety days prior to the date on which termination takes effect, notification shall be furnished to the franchisee on the earliest date reasonably practicable.  15 U.S.C. § 2804(b)(1)(A).  Equilon's first notice of termination provided ninety days notice to Defendants.  The two supplemental notices were sent thereafter as soon as Equilon became aware of additional grounds for termination.

Shahbazi admits that rent has not been paid, and that fuel has not been delivered.  He contends that neither of these occurrences is a basis for causing such distraction to him and his family.  He also asserts that direct acts by Equilon and Peninsula are responsible for his not being able to pay rent and being out of fuel.  Specifically, he asserts that Equilon has engaged in zone pricing, discrimination, and unfair business practices.  However, Shahbazi's zone pricing claims have already been litigated to finality in state proceedings, and he was even sanctioned by the state court for filing repeated motions for reconsideration.  Supp. West Decl. at Ex. C.  The discrimination claim was previously litigated in this Court, and the judgment in favor of Equilon was affirmed by the Ninth Circuit.  West Decl. at Ex. A; West Decl. at Ex. H.

There is no evidence before the Court that the present lawsuit is retaliatory.  The Lease does not contain a provision requiring Equilon to reduce the rent or otherwise offer Shahbazi temporary assistance in the event that he ceases paying rent.  In papers untimely filed the evening before the hearing, Shahbazi alleges that Equilon has failed to perform its contractual obligation to exercise its rights of first refusal in Shahbazi's efforts to sell his franchise prior to the events giving rise to this litigation.  These allegations may require further inquiry at a later stage in this litigation.  However, at this stage, there is not evidence before the Court demonstrating bad faith to a degree that would tip the likelihood of success on the merits in Shahbazi's favor.

**B. Possibility of Irreparable Injury**

Equilon asserts that it will suffer irreparable injury if this motion is denied.  First, it asserts that it will suffer injury to the goodwill associated with its trademark because Shahbazi continues to occupy the Salinas Station, displaying Equilon's trademarks and logos, with no gas to sell.  Economic injury alone does not support a finding of irreparable harm because such injury

7

1    can be remedied by a damage award.  However, damages involving goodwill are intangible and

2    difficult to valuate, and thus may constitute irreparable injury.  *Rent-A-Center, Inc. v. Canyon*

3    *Television & Appliance Rental, Inc.*, 944 F. 2d 597, 603 (9th Cir. 1991).

4           Second, Equilon asserts that because it lawfully terminated the Lease, Shahbazi is a

5    holdover tenant with no legal claim to the property.  Where there is a substantial likelihood that a

6    station lease was properly terminated under the PMPA, the lessee's continued occupation

7    constitutes irreparable injury because money damages cannot adequately compensate for the loss

8    of a unique piece of property.  *See Shell Oil Co. v. A.Z. Servs.*, 990 F. Supp. 1406, 1414 (D. Fla.

9    1997).

10          Third, Equilon asserts that Defendants will be unable to pay money damages if Equilon

11   prevails on the merits.  It claims that Defendants owe Equilon more than $44,000 in rent and that

12   this amount continues to increase.  A party may show irreparable harm by demonstrating that

13   money damages will be an inadequate remedy due to impending insolvency of the defendant.  *In*

14   *re Estate of Ferdinand Marcos Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994)

15   (restricting its holding to extraordinary cases in which equitable relief is sought).  Although

16   Equilon has submitted evidence of various tax liens against the Salinas Station, there is

17   insufficient evidence at this stage to conclude that the Defendants face impending insolvency.

18   There is no evidence that the present situation is extraordinary.  Nonetheless, the Court finds that

19   Equilon does face the possibility of irreparable injury in the form of loss of goodwill and the use

20   of its property.

21          Equilon does not address the issue of a bond in its moving papers.  Having reviewed the

22   record, the Court finds that the sum of $100,000 will be adequate to compensate Shahbazi in the

23   event it is determined that an injunction should not have issued.

                                    **IV. ORDER**

24

25          Good cause therefore appearing, IT IS HEREBY ORDERED that the instant motion is

26   GRANTED; and it is further ORDERED that:

27          (1) Defendants Mehdi Shahbazi and Balwinder Singh (aka Ben Pannu), their agents,

28   servants, employees, and attorneys, and all those persons in active concert of participation with

                                           8

them, or any one of them, shall immediately surrender and vacate the Shell-branded service station premises locates at 417 North Main Street, Salinas, California, to Equilon;

(2) Defendants Mehdi Shahbazi and Balwinder Singh (aka Ben Pannu), their agents, servants, employees, and attorneys, and all those persons in active concert of participation with them, or any one of them, are enjoined from remaining on or reentering the Salinas Station premises, pending determination of this action;

(3) Defendants Mehdi Shahbazi and Balwinder Singh (aka Ben Pannu) shall return to Equilon all of Equilon's equipment, fixtures and other property located at the Salinas Station premises; and

(4) Defendants Mehdi Shahbazi and Balwinder Singh (aka Ben Pannu) shall remove all of their personal property and equipment location at the Salinas Station premises, but without injury to the premises or any of Equilon's property thereon.

The issuance of this injunction shall be conditioned upon the posting of a bond in the amount of $100,000.

DATED: December 5, 2006.

JEREMY FOGEL
United States District Judge

9

1   This Order has been served upon the following persons:

2

3   Gary Ernest Gray          mail@graybattey.com

    Rosanne L. Mah           rosanne.mah@bingham.com

4   James Severson           james.severson@bingham.com

5   Colin C. West            colin.west@bingham.com

6

7   Mehdi Shahbazi
    3030 Del Monte Blvd.,
8   Marina, Ca 93933

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-05818 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(JFEX1)